UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | § | Case No. 24-40296-169 |
| | § | |
| Andrew Christopher Coffer, | § | Chapter 13 |
| | § | |
| Debtor. | § | Re: Doc. Nos. 26, 35, 47, 48 |
| | § | |
| | § | FOR PUBLICATION |

**OPINION AND ORDER ON
MOTION TO CONFIRM ABSENCE OF THE AUTOMATIC STAY**

**I.   Overview**

On April 30, 2024, the matter of the Motion Confirming Absence of the Automatic Stay (the "Motion") filed by Hope Federal Credit Union (the "Creditor"), came before this Court for hearing. D.E. 4/30/24.[1]  The Motion seeks an order confirming that commercial real estate located at 1220 Oakwood Road, Pine Bluff, Arkansas (the "Real Estate") does not comprise property of Andrew Christopher Coffer's (the "Debtor's") bankruptcy estate and is not subject to the automatic stay of 11 U.S.C. § 362(a).  Doc. Nos. 26, 47.  Debtor counters the Motion by asserting that he possesses a contingent interest in the Real Estate that brings it within the automatic stay's protection as property of his bankruptcy estate.  Doc. No. 35.  The parties agree about the facts underlying this matter, but dispute the legal conclusions derived from those facts.  This Opinion and Order resolves the Motion.

**II.   Background**

On January 30, 2024 (the "Petition Date"), Debtor filed a petition for relief under Chapter

---

[1] References to "Doc. No. ___" in this Opinion and Order are to documents entered upon this Court's docket in this bankruptcy case.  References to "D.E. __/__/__" in this Opinion and Order are to text entries entered upon this Court's docket in this bankruptcy case.  This Court uses these references to enhance the clarity of this ruling and the record.

1

13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code", or the "Code"), in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division (this "Court") that this Court docketed as case number 24-40296-169. Doc. No. 1. Debtor subsequently filed bankruptcy schedules and a Statement of Financial Affairs, Doc. No. 13, and a proposed Chapter 13 plan. Doc. No. 14.

Debtor's Schedule A/B: Property (the "Schedule A/B") asserts that Debtor owns the Real Estate jointly with a "business partner." Doc. No. 13 at 3, Part 1, Question 1. The Schedule A/B values the Real Estate at $80,000 and values the portion of the Real Estate that Debtor owns at $40,000. Id. The Schedule A/B adds that the Real Estate comprises commercial real estate that Debtor uses in operating "his business" and that Debtor's limited liability company, The Wing King LLC ("Wing King"), owned the Real Estate until January 29, 2024, when that limited liability company was "administratively dissolved." Id.

Debtor's Statement of Financial Affairs asserts that Wing King operated from August 10, 2021 to January 29, 2024, stating that the "company was formed to operate a resturant but the business never opened it's doors [sic]." Doc. No. 13 at 34, Part 11, Question 27. Schedule A/B does not list any interest in Wing King as Debtor's property, but Schedule A/B and the filed Statement of Financial Affairs assert that Debtor possesses an ownership interest in four businesses other than Wing King. Doc. No. 13 at 7-8, Part 4, Question 19; at 34, Part 11, Question 27. Debtor's Schedule D: Creditors Who Have Claims Secured by Property identifies that Creditor holds a claim secured by a mortgage against the Real Estate in the amount of $61,627. Doc. No. 13 at 14, Part 1, Question 2.2.

Creditor filed the Motion on March 15. Doc. No. 26. The Motion asserts that Creditor holds a perfected security interest in the Real Estate by virtue of a promissory note and mortgage

2

executed by Wing King and subsequently recorded on August 9, 2022. Id. at 2; at Exh. A; at Exh. B. The Motion asserts that Wing King failed to make all payments due to Creditor and that Creditor pursued judicial foreclosure of the Real Estate, resulting in an Arkansas state court's entry of a Default Judgment and Decree of Foreclosure (the "Judgment and Decree") regarding the Real Estate on January 10, 2024, in the amount of $61,627.27 plus attorney's fees of $2,500, costs of $938.40, and post-judgment interest and costs. Id. at 3-4; Exh. C. The Motion also asserts that Debtor filed Articles of Termination for Wing King with the State of Missouri on January 29, 2024. Id. at 4; at Exh. 3. The Motion argues that Wing King owns the Real Estate under applicable Missouri limited liability company law; that Wing King's reported termination did not vest Debtor with any interest in that Real Estate; and that the automatic stay did not apply to the Real Estate as of the Petition Date. Id.

On April 16, Debtor filed his Response to Motion of Hope Credit Union Confirming Absence of the Automatic Stay (the "Response"). Doc. No. 35. The Response admits that Debtor was a member of Wing King, Id. at 9, but asserts that "it is now dissolved", Id. at 2; admits Wing King executed a Business and Continuing Security Agreement and executed the mortgage in favor of Creditor, Id. at 2-3; admits the Warranty Deed for the Real Estate identifies that Wing King is owner of that property, Id. at 3; admits Debtor filed Articles of Termination for Wing King on January 29, 2024, Id. at 4; and admits Wing King failed to make all required payments to Creditor and Creditor obtained the Judgment and Decree against Wing King and the Real Estate. Id. at 3-4. The Response asserts that "Wing King is winding down" and that Debtor possesses an ownership interest in the Real Estate by virtue of Wing King's termination.[2] Id. at 4-6.

---

[2] Debtor subsequently abandoned this argument at the hearing on the Motion, see D.E. 4/30/24, but this Court recites this assertion to contextualize Debtor's subsequent arguments against the Motion.

3

This Court heard argument on the Motion and the Response on April 30.  D.E. 4/30/24.  At that hearing, Debtor conceded that the exhibits attached to the Motion were admissible and accurate and that no evidence existed that anyone other than Wing King held title to the Real Estate.  Id.  Debtor then modified his previous position to argue that the Real Estate comprises property of the bankruptcy estate because its value exceeds the amount of the Judgment and Decree, creating a contingent interest in that property that Debtor possesses by virtue of his membership interest in Wing King.  Id.  Upon inquiry by this Court, Debtor conceded that nothing in the record reflects that Wing King had been wound up or was in the process of being wound up, but Debtor contended that he could "liquidate" Wing King and effectuate a winding up of that limited liability company through his Chapter 13 case.  Id.  Creditor responded that both Missouri's limited liability company statute and substantial non-Missouri caselaw provide that property owned by a limited liability company does not comprise property of its member's bankruptcy estate.  Id.

This Court set a deadline for simultaneous post-hearing briefing on the issues at bar.  Id.  Creditor's Post-Hearing Brief, filed on April 21, identifies additional caselaw, maintains Creditor's position that Debtor possesses an interest in Wing King—but not in the Real Estate, and argues that only Debtor's membership interest in Wing King comprises property of Debtor's bankruptcy estate.  Doc. No. 47.  Debtor's Brief in Opposition to the Motion, filed that same day, argues that Debtor possesses a contingent interest in the Real Estate because he has the right to receive a distribution from Wing King's assets, including any equity in the Real Estate, after Wing King's winding up.  Doc. No. 48.[3]

---

[3] Debtor attached exhibits to the Brief in Opposition to the Motion, including his affidavit regarding Wing King's purchase and use of the Real Estate, what purports to be a Jefferson County (Arkansas) Report relating to assessed tax on the Real Estate, and a copy of a personal guarantee

4

### III.     Jurisdiction and Venue

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 151, 157(a) and 1334 and Local Rule 9.01(B)(1) of the United States District Court for the Eastern District of Missouri.  Venue for this matter rests properly in the Eastern District of Missouri under 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(G), and (b)(2)(O) and a contested matter under Federal Rule of Bankruptcy Procedure 9014(a).

### IV.     Governing Law

A bankruptcy petition's filing imposes an automatic stay that protects a debtor, a debtor's property, and the property of a bankruptcy estate from efforts to obtain possession of, or obtain control over, that property.  11 U.S.C. § 362(a).  Actions taken in violation of the automatic stay to obtain possession or control of estate property often result in severe penalties.  See Garden v. Cent. Nebraska Hous. Corp., 719 F.3d 899, 906 (8th Cir. 2013); 11 U.S.C. § 362(k) (permitting recovery of actual and punitive damages for violations of the automatic stay).  However, the automatic stay only applies to property that a debtor holds a legal or equitable interest in under applicable law.  In re Panther Mountain Land Dev., LLC, 686 F.3d 916, 921 (8th Cir. 2012). Accordingly, the Bankruptcy Code permits creditors to seek orders granting relief from the automatic stay, as well as orders declaring that certain property does not belong to the bankruptcy estate and that actions taken against that property do not violate the automatic stay.  11 U.S.C. § 362(d); see generally In re Ziemski, 338 B.R. 802, 804 (B.A.P. 8th Cir. 2006), aff'd, 220 F. App'x

---

executed in conjunction with the loan transaction involving Creditor and the Real Estate.  Doc. No. 48 at Exhs. 1-3.  Debtor did not present or seek admission of these documents at hearing, the Brief in Opposition to the Motion lacks both foundation for those documents and any explanation why this Court should consider them after the close of the April 30 hearing, and the record lacks any indication that Creditor consents to the admission or consideration of those documents as evidence regarding the Motion.

Case 24-40296 Doc 50 Filed 07/17/24 Entered 07/17/24 16:56:54 Main Document
Pg 6 of 17


443 (8th Cir. 2007) (explaining that a court may determine whether property comprises estate property and if actions against that property violate the automatic stay).

A bankruptcy estate generally includes all of a debtor's legal and equitable interests in property as of the petition date, including inchoate and contingent interests. 11 U.S.C. § 541(a)(1); In re Simply Essentials, LLC, 78 F.4th 1006, 1009 (8th Cir. 2023). State law determines the nature and extent of a debtor's interest in property, but federal bankruptcy law dictates whether any interest comprises bankruptcy estate property. Simply Essentials, 78 F.4th at 1009; In re Klein-Swanson, 488 B.R. 628, 633 (B.A.P. 8th Cir. 2013). In all events, the party asserting that property comprises property of a bankruptcy estate—here, Debtor—bears the burden to demonstrate that they held a legal or equitable interest in that property when the case commenced. See Klein-Swanson, 488 B.R. at 633.

V.  **Analysis**

Creditor argues that both Missouri statutes and relevant non-Missouri case law establish that Debtor possesses a membership interest in Wing King but lacks any contingent or other interest in that limited liability company's assets. D.E. 4/30/24; Doc. No. 26 at 4-5; Doc. No. 47 at 3-6. Debtor argues that the Real Estate comprises property of the estate because Missouri's limited liability company law gives Wing King's members, including Debtor, a "contingent interest" in Wing King's equity in the Real Estate after that company's dissolution, winding up, and termination. D.E. 4/30/24; Doc. No. 35 at 5-11; Doc. No. 48 at 8-9.

    *A.  Debtor Lacked an Interest in the Real Estate Before Wing King Filed Articles of Termination.*

Arkansas law initially governs the question of the Real Estate's ownership prior to the Petition Date because of its situs in that state. See Butner v. United States, 440 U.S. 48, 55 (1979); In re Broadview Lumber Co., 118 F.3d 1246, 1250 (8th Cir. 1997). Under Arkansas law, a

6

property's titleholder owns that property.  In re Martin, 205 B.R. 143, 144 (Bankr. E.D. Ark.), aff'd sub nom. Martin v. Martin, 213 B.R. 575 (E.D. Ark. 1997), aff'd sub nom. In re Martin, 141 F.3d 1169 (8th Cir. 1998) (explaining that the party named on a deed to property comprises its legal owner under Arkansas law absent evidence to the contrary).  When a limited liability company holds title to property, including real estate, that company—rather than its members— owns the property absent evidence of a transfer ownership.  In re Ealy, 307 B.R. 653, 656 (Bankr. E.D. Ark. 2004).  Here, Debtor admits that that the Warranty Deed for the Real Estate titled it in Wing King's name, that Wing King entered into a Business Credit and Continuing Security Agreement to finance that acquisition, and that Wing King executed the Real Estate transaction and mortgage documents.  Doc. No. 35 at 2-3.  The record lacks any evidence showing that Debtor possessed any legal or equitable ownership interest in the Real Estate after Wing King purchased it and financed that purchase.  Rather, the record demonstrates that Wing King then held legal and equitable title to the Real Estate.  Moreover, the record lacks any evidence showing any transfer of the Real Estate after Wing King acquired it.  Accordingly, Wing King owned the Real Estate under Arkansas law as of the Petition Date.

Missouri's Limited Liability Company Act, MO. REV. STAT. §§ 347.010-347.189,[4] then determines whether Debtor possesses any interest in the Real Estate due to his membership interest in Wing King.[5]  In Missouri, a limited liability company's members each possess an ownership interest in that company, specifically a personal property interest that includes the right to

---

[4] All references to the Missouri Revised Statutes in this Opinion and Order are to the versions of those statutes in effect as of the time this Court issued this ruling.

[5] No operating agreement appears of record for Wing King.  Therefore, the Missouri Limited Liability Company Act governs Wing King's formation, governance, operations, and dissolution, as well as its members' rights.  See MO. REV. STAT. §§ 347.010–347.189.

7

participate in the company's distributions and management.  See MO. REV. STAT. §§ 347.101.1, 347.115.1.  However, a limited liability company's members lack any interest in the company's specific assets; instead, the company itself holds title to those assets.  MO. REV. STAT. § 347.061.1 ("Property transferred to or otherwise acquired by a limited liability company becomes property of the limited liability company.  A member has no interest in specific limited liability company property.").  Moreover, title to any real property or any estate in real property acquired in a limited liability company's name vests in the company, rather than in any member.  MO. REV. STAT. § 347.061.2.

Taken together, Arkansas and Missouri law and the record before this Court reflect that Wing King held title to the Real Estate from and after August 9, 2022.  Doc. No. 26 at Exh. C; D.E. 4/30/24.  Therefore, Debtor lacked any ownership interest in the Real Estate under Missouri's Limited Liability Company Act prior to the filing of Wing King's Articles of Termination.

> B. *Wing King's Filed Articles of Termination Do Not Vest Any Interest in the Real Estate in Debtor.*

The next issue to address is whether Wing King's filed Articles of Termination granted Debtor an interest in the Real Estate.  Under Missouri law, certain events effectuate a limited liability company's dissolution, including the members' unanimous written consent, a member's withdrawal, entry of a judicial dissolution decree, or any event specified in the company's operating agreement or articles of organization.  MO. REV. STAT. § 347.137.1.  When a dissolution event occurs, the limited liability company must file a notice of winding up with the Missouri Secretary of State to disclose the company's dissolution and the commencement of its winding up process.  MO. REV. STAT § 347.137.2.  The record in this Case lacks any information about the cause or date of the event or events giving rise to Wing King's dissolution, but Debtor and Creditor

8

agree that Wing King had begun winding up of the Petition Date. D.E. 4/30/24; Doc. No. 26 at 4; Doc. No. 35 at 6.

After filing a notice of winding up, a limited liability company ceases conducting business, except as required to conclude its business operations. Mo. Rev. Stat. § 347.139.1. However, the company's separate existence continues until it files articles of termination with the Missouri Secretary of State after distribution of all the company's remaining property accord with section 347.139 of the Missouri Revised Statutes. See Mo. Rev. Stat. § 347.045.[6] That statutory section requires a limited liability company to liquidate its business and affairs by conveying and disposing of, and then distributing its assets in satisfaction of its debts to creditors in accord with their claims' priority, then to the company's members in satisfaction of any amounts owed them for regular or special distributions, and then by distributing any remainder to members in proportion to their ownership interests. Mo. Rev. Stat. § 347.139.2. After distributing all known assets and filing articles of termination, the limited liability company continues to exist for litigation purposes and certain actions enumerated in the Missouri Limited Liability Company Act. Mo. Rev. Stat. § 347.139.3. In addition, as of termination, the limited liability company's authorized persons or members become trustees for the company's creditors and members and possess authority to

---

[6] The record before this Court fails to establish the circumstances surrounding Wing King's filing of Articles of Termination with the Missouri Secretary of State. What occurred remains an open question in light of Debtor's admissions that Wing King did not liquidate any assets or make statutory distributions to its creditors or members in accord with sections 347.139 and 347.045 of the Missouri Revised Statutes before the Petition Date. D.E. 4/30/24. Neither party addressed this issue in briefing or arguing the Motion, so this Court limits its discussion and analysis in this Opinion and Order to the parties' contentions of record.

distribute or convey company assets discovered after termination and to resolve new claims against the company.[7]  Id.

Filing articles of termination cancels a limited liability company's articles of organization but does not automatically result in the transfer, conveyance, or distribution of the company's assets.  Instead, changing ownership of a company's property requires its authorized persons or members to take necessary actions to transfer title to real property, convey any personal property, and distribute any assets during the winding up period.  See MO. REV. STAT. § 347.063.1 (requiring an instrument of conveyance to transfer limited liability company property); see also MO. REV. STAT. § 347.139.3 (describing ability of authorized persons or members to convey limited liability company discovered after termination).  Here, the record fails to show any transfer, conveyance, or distribution of Wing King's assets, so those assets remain Wing King's property as of the Petition Date.  Thus, the Debtor lacks any ownership interest in the Real Estate as a result of the filing of Wing King's Articles of Termination.

          C.    *Debtor Does Not Possess a Contingent Ownership Interest in the Real Estate.*

Debtor asserts that the Missouri Limited Liability Company Act provides him with a contingent interest in the Real Estate because that property's value exceeds the amount due the Creditor under the Judgment and Decree and, therefore, at least a portion of that equity should be distributed to Debtor as a member of Wing King.  D.E. 4/30/24; Doc. No. 48.  Debtor attempts to

---

[7] A limited liability company's authorized member/s and/or manager/s generally have authority to wind up the company's affairs and to complete necessary actions pending at dissolution. MO. REV. STAT. § 347.147.  However, a member subject to a bankruptcy proceeding cannot bind the limited liability company or undertake actions affecting its assets or obligations absent a court order. MO. REV. STAT. § 347.147 (limiting authority to wind up limited liability companies to non-bankrupt members); see also MO. REV. STAT. § 347.067.2 (providing that a limited liability company's authorized person who is in bankruptcy cannot bind the limited liability company to any unauthorized act if a non-bankrupt authorized person can act).

10

bolster this argument by citing caselaw that provides that a dissolved corporation's shareholders possess interests in the corporation's assets. Doc. No. 35 at 5-9; Doc. No. 48 at 4-6.

Those citations fail to support Debtor's position because they either involve non-Missouri law or ignore that Missouri law provides that corporate shareholders only possess an interest in funds remaining after liquidation of a corporation's assets and satisfaction of its creditors, not an interest in the corporation's assets per se. Wendel v. Wendel, 72 S.W.3d 626, 632 (Mo. Ct. App. 2002); see also Gray v. Bicknell, 86 F.3d 1472, 1488 (8th Cir. 1996) (explaining that shareholders possess interests in corporate shares, not in a corporation's assets). Debtor's argument also ignores caselaw that holds that a debtor's bankruptcy estate includes a debtor's ownership interest in an entity, including a limited liability company, partnership, or corporation, but a bankruptcy estate does not include the entity's assets. See Matter of Newman, 875 F.2d 668, 670 (8th Cir. 1989) (discussing Missouri partnership law and evaluating nearly identical language in the Missouri Limited Liability Company Act); see also Disalvo Props., LLC v. Bluff View Com., LLC, 464 S.W.3d 243, 246 (Mo. Ct. App. 2015) (observing that Missouri's Limited Liability Company Act resembles and should be construed in light of the provisions of Missouri's Uniform Limited Partnership Law and Uniform Partnership Law); see generally St. Louis Bank v. Kohn, 517 S.W.3d 666, 673 (Mo. Ct. App. 2017) (same).

Missouri statutes support this outcome. For example, Missouri partnership statutes provide that partners own a tenancy in the partnership so that all property brought into, or acquired on behalf of, the partnership comprises partnership property, not the individual partners' property. See Mo. Rev. Stat. §§ 358.050.1, 358.250, 358.060.2 (codifying Missouri's Uniform Partnership Law); see also Mo. Rev. Stat. §§ 358.060.2, 359.671 (providing that Missouri's Uniform Partnership Law also governs the Limited Partnership Law except where inconsistent). Likewise,

11

Missouri law provides that a member's interest in a limited liability company comprises a distributional interest that the member owns in proportion to the company's other members, but that interest remains personal property, separate and distinct from the property or assets of the company itself.  See MO. REV. STAT. §§ 347.061.1-.4, 347.115.1-.3.

Moreover, the filing of Wing King's Articles of Termination failed to change the nature of Debtor's membership interest.  As discussed above, after a limited liability company dissolves, it continues until it completes winding up its business and affairs and distributes funds in accord with statutory priorities, see MO. REV. STAT. §§ 347.139.1, and after its existence terminates, it remains capable of litigation and other actions provided for under Missouri's Limited Liability Company Act, including distribution of company assets through the winding up process.  MO. REV. STAT. § 347.139.2.  Thus, Wing King's corporate existence continues only for the limited purpose of competing its winding up process.

No dispute exists that Wing King had not liquidated its assets or paid its obligations to its creditors as of the Petition Date.  D.E. 4/30/24.  And nothing within Missouri's Limited Liability Company Act provides a member with an ownership interest, contingent or otherwise, in a limited liability company's assets or property.  Thus, Wing King owned the Real Estate as of the Petition Date and continues to own it until and unless its authorized persons or members liquidate the Real Estate and other assets, if any, and fully satisfy its creditors' claims, including the debt owed Creditor arising from its promissory note and/or the Judgment and Decree.[8]  Accordingly, as of

---

[8] This Court notes that a factual issue exists about the value of the Debtor's membership interest in Wing King has value.  The Debtor's Schedule A/B values the Real Estate at $80,000, but the Judgment and Decree calculated the amount owed to Creditor at almost $65,000 before the accrual of any post-judgment interest or costs.  No evidence appears before this Court about whether Wing King had or has other assets or liabilities.  As a result, it remains unclear whether the Debtor might receive any funds due to his membership interest in Wing King.

12

the Petition Date, Debtor owned, and his bankruptcy estate contained, a membership interest that included a proportional distributional right to receive any funds or assets Wing King holds after it "liquidate[s] its business and affairs; proceed[s] to collect its assets; [and] pay[s], satisf[ies], or discharge[s] its liabilities and obligations" as required under section 347.139 of the Missouri Revised Statutes. MO. REV. STAT. § 347.139.2.

    D. *Federal Bankruptcy Law Demonstrates the Real Estate Fails to Comprise Property of Debtor's Bankruptcy Estate.*

Bankruptcy courts interpreting other states' similar limited liability company statutes conclude that a limited liability company's property does not comprise property of its member's bankruptcy estate. See, e.g., In re Stillwater Asset Backed Offshore Fund Ltd., 559 B.R. 563, 593 (Bankr. S.D.N.Y. 2016) ("A membership interest in a limited liability company is property (just as a share of stock is property), but the owner of the membership interest has no ownership right in the property that is owned by the limited liability company."); In re McCauley, 549 B.R. 400, 410 (Bankr. D. Utah 2016) (explaining that a debtor's ownership interest in a limited liability company extends only to the debtor's membership interest and the membership interest does not equate to an ownership interest in the company's real property); In re Burrow, 505 B.R. 838, 845 (Bankr. E.D. Ark. 2013) (observing that a debtor's membership interest in a limited liability company became property of the bankruptcy estate but property titled in the company's name did not); In re Warner, 480 B.R. 641, 653 (Bankr. N.D.W. Va. 2012) (explaining that real property held by a debtor's limited liability company was not the debtor's property; rather, the debtor, and thus the estate, possessed a personal property right to distributions from the company); In re Campbell, 475 B.R. 622, 635 (Bankr. N.D. Ill. 2012) (explaining that funds held in bank accounts titled in the debtors' limited liability companies were not the debtor's property and not property of the bankruptcy estate). Moreover, that principle continues to apply to limited liability companies

13

that dissolve or terminate. See, e.g., In re Hart, 530 B.R. 293, 302 (Bankr. E.D. Pa. 2015); In re Aldape Telford Glazier, Inc., 410 B.R. 60, 64 (Bankr. D. Idaho 2009).

For example, in In re Hart, a limited liability company's member claimed she possessed a legal or equitable interest in the terminated company's real property. Hart, 530 B.R. at 300-01. The bankruptcy court found that Pennsylvania's limited liability company statute—a law nearly identical to Missouri's own—provided that the company's termination only gave the debtor the right to a cash distribution of proceeds remaining after satisfaction of the company's creditors and failed to create an interest in the company's assets. Id. at 302. In rejecting the member's argument, the bankruptcy court observed that because the debtor lacked any legal or equitable interest in the company's property, the automatic stay did not apply. Id.

Likewise, in In re Aldape Telford Glazier, Inc., the bankruptcy court determined that the members of two dissolved limited liability companies lacked any interest in company assets upon the companies' dissolution and, instead, the members possessed a right to distributions after payment of the companies' creditors' claims. Aldape Telford Glazier, 410 B.R. at 65-66. The court concluded that the members could not claim that the bankruptcy estate included the dissolved companies' assets. Id. at 64. The Aldape Telford Glazier court explained that a debtor cannot label a limited liability company's property as their own prior to the completion of the winding up process because a limited liability company's dissolution fails to transform the company's property into property of the bankruptcy estate. Id.

In a case that squares with the one now before this Court, a dissolved Massachusetts limited liability company's members claimed a homestead exemption in the company's property, alleging the company's property reverted to them upon its dissolution because the equity in that property exceeded creditors' claims against the company. In re Kane, No. 10-18898-JNF, 2011 WL

14

2119015, at *7 (Bankr. D. Mass. May 23, 2011). The Kane court found that the members could not claim an exemption in the property because it did not comprise bankruptcy estate property. Id. The court explained that the members' failure to fully wind up the company and distribute the company's property in accord with Massachusetts law meant that the company continued to own the property and that the members lacked any right to distribution from the property's equity until resolution of the company's outstanding debts. Id.

Moreover, even if Debtor possesses an interest in Wing King's assets derivative from his membership interest in that company, that hypothetical interest fails to convert the Real Estate into property of the bankruptcy estate. See, e.g. Matter of Knight, 574 B.R. 800, 814 (Bankr. N.D. Ga. 2017) ("Even if a debtor has a "*derivative interest*" in the business's property, that is not sufficient to make the property "property of the debtor"—the debtor must have a "*direct* proprietary interest.") (internal citations omitted and emphasis in original). Section 541 of the Code broadly delineates bankruptcy estate property, including contingent interests in future payment, but that statute does not extend beyond rights and interests that existed on the petition date under state law or create exceptions other than those enumerated in its provisions. See Wetzel v. Regions Bank, 649 F.3d 831, 835 (8th Cir. 2011) (explaining that a contingent interest in a right to future distributions does not bypass state law to create an interest in the actual assets that might fund future distributions); see also In re Amerson, 839 F.3d 1290, 1300 (10th Cir. 2016) (same). The Debtor lacked either legal or equitable title to the Real Estate as of the Petition Date, so it remains outside the bankruptcy estate and outside the scope of the automatic stay.

## VI. Conclusion

In light of the facts presented to this Court and the applicable statutory and caselaw, the filing of Wing King's Articles of Termination on January 29, 2024 did not alter that limited

15

liability company's legal interest in the Real Estate, effectuate a transfer of the Real Estate, or convey any interest in the Real Estate to Debtor. Debtor possessed no legal or equitable interest in or to the Real Estate either before or after the filing of the company's Articles of Termination or before or after the Petition Date. Therefore, the Real Estate does not comprise property of Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a). Accordingly, this Court

**ORDERS** that the Motion of Hope Credit Union Confirming Absence of the Automatic Stay is **GRANTED**, in that the real property located at 1220 Oakwood Road, Pine Bluff, Arkansas, does not comprise property of Debtor's bankruptcy estate under 11 U.S.C. § 541(a) and, therefore, the automatic stay of 11 U.S.C. § 362(a) does not apply to that property.

DATED: July 17, 2024  
St. Louis, Missouri  
jah

                BONNIE L. CLAIR  
                Chief United States Bankruptcy Judge

Copies to:

**Andrew Christopher Coffer**  
10310 Capitol Dr.  
Saint Louis, MO 63136  
**Debtor**

**David Nelson Gunn**  
2249 S. Brentwood  
Saint Louis, MO 63144  
**Debtor's Counsel**

**John Buzbee**  
Nixon, Light & Buzbee, PLLC  
10201 W. Markham, Suite 108  
Little Rock, Arkansas 72205  
**Creditor's Counsel**

**Electro Savings Credit Union**
Riezman Berger, P.C.
7700 Bonhomme, 7th Floor
St. Louis, Missouri 63105
**Notice Party**

**Diana S. Daugherty**
P. O. Box 430908
St. Louis, MO 63143
**Chapter 13 Trustee**

**Office of US Trustee**
111 S Tenth St, Ste 6.353
St. Louis, MO 63102
**U.S. Trustee**